There was substantial evidence in this case that after Cavitt left the McKnight home and was already back in his own house, Meanta McKnight deliberately killed her stepmother because of personal hatred and for no other reason. An act that, in words used by the state Supreme Court many times over the past hundred years, was an independent product of Meanta's mind outside of and foreign to the common design to commit the burglary with Cavitt and Williams. The question is whether Cavitt is guilty of murder under California's felony murder rule as the California courts and, indeed, as the United States Supreme Court understood that rule at the time of his trial. To see that the United States Supreme Court in Harrington against California, to see that the construction of the felony murder rule that the state Supreme Court introduced in Cavitt's case almost a decade after his trial changed the rule for accomplices and expanded it in an unforeseeable way, you only have to read the consistent line of California Supreme Court opinions from Washington, Gilbert, and Shader, through Terry, Satchell, and Pisano, all of which are cited and discussed in our briefs. Yes, they were talked about by the California Supreme Court, weren't they? And the California Supreme Court said, no, you've misunderstood or misinterpreted our jurisprudence. We, as the California Supreme Court, they didn't agree with the state attorney general's reading of it either. Correct. So they said, we're going to clarify. And I interrupt because I'd like you to factor in our standard of review in this case. Certainly. Let me ask the question before you start answering. Okay. So I'd like to know how does AEDPA play into this? In other words, what filtering prism does AEDPA introduce in this as we evaluate the reasonableness or unreasonableness of the California Supreme Court's decision? Counsel, let me finish. I'll give you the extra time if you wait. Okay? The California Supreme Court has interpreted its own law. And so as the body charged with interpreting its own law, what deference do we have to give to it? AEDPA certainly governs this case. But under AEDPA, if the California Supreme Court's decision is contrary to established Federal laws established by the United States Supreme Court, then this Court does not have to defer to it. And we submit that the California Supreme Court's decision in this case is contrary to the U.S. Supreme Court's decisions in Bowie, Rogers, and a spate of other cases. The California Supreme Court certainly is entitled to say the law needs clarification. We think that previous interpretations of the law are incorrect. They said that many times. We've discussed three of those cases in our brief, people against Davis, people against King, people against Blakely. What they cannot do as a matter of due process is apply retroactively a new interpretation, which they believe is the correct one, if that interpretation was unforeseeable and expanded the scope of criminal liability from what it was understood to be by the California courts at the time Cabot committed the crimes in this case. And that, we submit, is what the California Supreme Court did here. They may have what, in their words, clarified the State's felony murder rule, but the clarification expanded the scope of a nonkiller accomplice's liability for murder under the felony murder rule from what it was understood to be when Cabot committed these crimes in 1995. The Supreme Court's decision to do that. Kagan. Doesn't that argument, counsel, fail to take into account the fact that there were cases going different ways prior to Mr. Cabot's matter? In Pulido, which is a 1997 case, the California Supreme Court talked about the fact that the case law was unsettled at the time in terms of what precise language and perhaps even the scope of accomplice liability really involved. It was unsettled when Cabot came along. They then clarified it further. How is that an unforeseen? Let me finish. How is that an unforeseeable expansion of the existing case law? Pulido was decided in 1997, two years after the crimes in this case were committed. Prior to Pulido, and of course prior to Cabot's case in the Supreme Court, there was no decision by the California Supreme Court or the California Court of Appeal which interpreted the scope of a nonkiller accomplice's liability in the way that the California Supreme Court did in Cabot's case. If you look back over the preceding three decades, and indeed if you go back to 1875 and review the long line of cases after that, you see that in each of those cases, and I will deal with the three outliers in a moment, the Court narrowed accomplice liability to those cases in which the homicide was committed in furtherance of the underlying felony that was common to all of the accomplices and the killer. The three outlier cases, Martin, Perry, and Waller, are all cases in which it was obvious that the homicide was committed in furtherance of the robbery, to advance or facilitate the robbery. There was no need to spell that out, because in those cases there was no dispute about it. What about the Court's own analysis of this, the facts in this case, as applying the nexus rule and finding that it was clearly within their established jurisprudence since your client did everything setting the stage for potential accidental death, I mean, they trussed her up, put her face down, she was breathing, he leaves, and then he introduces now the theory, well, she died because of an independent unforeseen act by me, and it couldn't have been in furtherance of our underlying purpose. They said, well, no, our jurisprudence requires, has always required some form of nexus, and there's clearly a nexus in this case. Well, the term logical nexus was introduced in Cabot's case. It appears in no other California murder case before Cabot. It's undefined. The Court gives no definition, provides no guidelines for a jury to use in applying that term to determine whether or not there's the sufficient causal connection between. Well, I think, I just read the opinion last night, and they went through a lot of, I mean, I've read it before, but I reread it last night, and there is an awful lot of repeated discussion talking about nexus and the absence of nexus. The shooting out of the window, for example, is the hypothetical they use and say shoot out the window at somebody who happens to be totally unrelated, but the shooter has a grudge. They cite the New York cases and history. So you're saying there's no guidance to judges or juries in that? I want to address both those points. Other States use logical nexus in their felony murder rules, but all those other States, New York, Pennsylvania, Connecticut, et cetera, define logical nexus to mean, expressly mean, in furtherance of. The California Supreme Court turns that construction upside down and says logical nexus doesn't mean in furtherance of. In furtherance of in California means logical nexus, but they don't define that. Now, as far as the hypothetical example is concerned, the burglar who shoots out the window when he sees his enemy, we respectfully submit that the California Supreme Court's analysis of that hypothetical is a tortured one. They have to say that when the shooting occurred, the homicide occurred, the killer was not jointly engaged in the burglary. But if you tweak the example very slightly, suppose the burglar at the time he commits the homicide is carrying the loot out of the house. He's clearly engaged in the burglary at that point. Suppose two burglars enter a house and it turns out that the occupant is a rival gang member, and for that reason alone, because he's the enemy of the killer, the killer shoots him. Clearly, the burglars are jointly engaged in committing the burglary at that time, but the California Supreme Court would say, well, in that case, there isn't the necessary logical nexus. Whether the logical nexus exists, and of course, that term was not used at the time of Cavett's case when he was tried, that's a matter exclusively for the jury to determine. And a jury, given instructions that they have to find a logical nexus without any guidelines to help them determine whether there is or isn't the necessary connection in a specific case, may very well say, well, in this case, if this were, as the evidence supported, an independent product of Meehan to McKnight's mind, committed only because of personal animus and not to advance the burglary, then the necessary nexus doesn't exist. Now, I would invite the Court's attention. I'll give you a couple minutes for rebuttal. Counsel, you're over time. I'll give you a couple of minutes for rebuttal. Okay? Thank you. I'm sorry. I didn't mean to. Good morning. I would like to just begin with to just address some of the questions that you all have posed. To start with Judge Fischer, the standard of review here is that you're correct that California's the final arbiter of its own law, but it does allow for, if there has been a judicial enlargement under Bowie, obviously there would be a federal constitutional violation. The standard of review, however, is that this Court must determine whether the Supreme Court misapplied Bowie. And specifically, this Court must find under Harrington v. Richter that the state ruling on the Bowie claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement. So that's the standard that we're looking in terms of whether the California Supreme Court misapplied Bowie in finding no error. Going to, I think that as here we would argue that there was no judicial enlargement. To begin, the statute doesn't have this limitation. The point of the felony murder rule, if you look at the legal landscape at the time, is that we don't care once you've engaged in these kinds of felonies what the particular mental state is of the folks that have combined, of the joint felons. We don't give them that kind of judicial calibration. You are responsible for accidental deaths, unintended acts. So the idea that, as counsel has suggested, that it was that you have to look at the specific intent of the killer to further the felon, it doesn't appear anywhere that requirement of specific intent. The only specific intent that's required is to engage in a felony. And if a murder happens during the course of that, if a killing happens during the course of that, we don't care if it's with malice or if it's unintentional. Well, what's the law? Go ahead. The California courts says there must be a logical nexus. What does that mean? A logical nexus means what they were trying to do is they were trying to exclude homicidal acts that are completely unrelated to the felony. So logical nexus, and they do define it, they say that a logical nexus is a, it is a mere coincidence, it's something beyond a mere coincidence of time or place, and it is the existence of objective facts that connect the act resulting in death to the felony the nonkiller committed. The acts resulting in death, the acts are committed, are connected. Here you have the same location as the felony. You have the same victim of the felony. And the – and it's facilitated by the same means. They left her, Cavett and his cohorts left her bound, duct tape over her mouth, beaten face down, and she died of suffocation. This is not an unrelated, and she was the object of the robbery. This is not an unrelated killing. It is exactly within the purview of the felony murder rule. So are you saying as applied, there's no ADPA violation, or as the rule is articulated, it's not a violation of the Bowie expansion? Either. Either one? Either one. You know if they did, but you're saying even if they did expand it as applied here, it comes within the infuriance of? So he should have foreseen that his defense was not a viable defense under existing law? Yes. It would – I mean, what his claim is, I mean, as I understand your question, you're saying was there a Bowie violation? No. I'm asking you if in going to – in his conduct and in the course of this, it was foreseeable that California law could have, notwithstanding he left and his accomplice had a grudge against her mother and she took the next step to assure that the victim did actually die as opposed to just being left there with the potential for dying, that it was foreseeable under the infuriance of language that he would not be held guilty as a non-killer accomplice? I think you used – I'm a little concerned of the double negatives, that he would not be. No, I think that he – I think that the infuriance language, the way that counsel is – has argued it and argued it in Cabot is a bit of a red herring, because the infuriance is, as the California Supreme Court said, is just trying to articulate this relation, this relationship, that it's not a completely unrelated act. And if you actually look at all the cases that counsel cites, there's not one that applied a specific intent requirement that the killer had to be killing to further to advance the felony. How does an accidental death advance a felony? It was not even an intended act. And, you know, in some of the cases that he cites himself, I think Stamp, the victim died of a heart attack and they were held liable. How does that advance? Well, if his defense is – and his defense was that, yes, she was left on the bed, but the proximate cause, not forget intent, the proximate cause of her death was an action by his accomplice to intentionally murder her, and he was not – that was not part of the plan. Okay, so he wasn't – there was an intervening causal act. I understand felony murder rule, as you say, is, at least in the Cabot opinion, is intended to avoid motivation. I understand that. But his theory to the jury was that he was foreclosed from presenting to the jury was the notion that we didn't need to kill her. That was not having anything to do with the plan. It was simply to make it look like something else. And then my cohort killed her mother. So I'm not – because she had a grudge against her. So you're saying that it was foreseeable to him that that theory might not stand up because of the unintended consequence that's articulated in the theory that the California Supreme Court articulated in Cabot and embodied it in this logical nexus concept? Was it foreseeable to him that there was no such defense under California law? Is that to summarize? Yes. I mean, that's the test. Was it reasonably foreseeable that what he did or what his co-defendant did would put him at risk of felony murder, in jeopardy of felony murder, under the existing unsettled or somewhat confusing law of California? That it was not clear, as the State is arguing, that the circumstances that led to this woman's death would escape – now I'm confusing myself. But it was not clear that he would not be held liable. I'm sorry. It was not clear that he would be held liable. That he would be held liable, even if the circumstances of the death were the intervening act of his co-defendant. Absolutely. And just to – I mean, I think you mentioned that you read the Supreme Court's decision last night. I would just direct you, one of the cases that they cited from 1971, Burton, talks about how when you engage in these inherently dangerous felonies and your accomplices kill someone, whether they do it for personal animus, whether they do it because they can, because – you are responsible. And what the State of the law was, well before CAVIT was tried or committed these offenses, was that the co-defendants are held strictly responsible. But – This wasn't the theory that the State was apparently urging in the CAVIT case. They kept coming back, well, the State attorney general says you don't have to go there. It's just whether you're proximate in time and so on and so forth. That was not the – what you're articulating now, apparently, was not the argument the State was – its interpretation of California law at the time. No. I think what the State was just simply arguing – I mean, appreciate that there's no – there's no – the defendant, CAVIT, was asking for a Calgic instruction. I mean, the Calgic instruction that was – that's traditionally given doesn't ever say you must commit this – you know, the non-killer must have committed the felony in order, specifically intended to advance – to advance the felony. That – that's what CAVIT was asking. He was saying let's get an instruction that says this. And the trial court said no way. That's not California law. Yeah. But the way the dichotomy is, I read the opinion last night, was that there – and I didn't get – you know, I'm not a mastermind of this, but I want to make sure it was fresh. They keep juxtaposing CAVIT's argument and the attorney general's argument that says you're both misreading our cases. Right. Okay? That's the point. And so now we're sitting here, and you're telling us the logical nexus rule that the Court came up with was clearly what the felony murder rule encompassed in theory. They just didn't use those names. And it wasn't, you know, the concept you're drawing from, the principle you're drawing from what the Court held in the logical nexus articulation is not the way the State argued it to the Supreme Court. No, I agree. And what we argued to the California Supreme Court was that there didn't have to be any connection. I guess in theory that maybe even the hypothetical, the law school hypothetical, you know, that if you're committing the burglary and you look over and you see someone you've been wanting to kill for 20 years and you go and shoot them. So we took that position, and that's what we said that the case law indicated. And CAVIT took this much more narrow position about having this specific intent. And what the California Supreme Court said is that you both are wrong, but you're talking about the same thing, and we're just – both of those are articulations of just trying to exclude those completely unrelated murders that occur, completely unrelated. And that is why, you know, at a baseline, CAVIT's claim under Bowie completely fails, because as this Court's held in Moore, I believe it is, when you have – even if we say that they were somehow different tests and they actually – even though the California Supreme Court said they weren't, they were talking about the same thing, they were articulations of the same thing, but even if they weren't, Moore says it's not unforeseeable when you have the, you know, the scope that was argued by the Attorney General, my office, of just it occurs anywhere during the course, unrelated, there's not – it's not unforeseeable. And, I mean, that – you know, and appreciate how it's also not a judicial enlargement when the statute doesn't contain this. And, you know, CAVIT relies on a New York statute that actually has in furtherance language in it. And even that State hasn't interpreted it the way that he's suggesting. I mean, it sort of defeats the felony murder rule to suddenly go and look at each individual killer's mental state. That's the whole point of the felony murder, is to not do that. Okay. As a matter of policy. Question? Did you have a question? No, I'm fine. Okay. Okay. All right. Thank you very much. Thank you. Mr. Rosenbaum, you're going to have some time to argue, so just be sure you listen to questions before they're answered, because this is an important case. I apologize for stepping out. This is an important case, and we do want to make sure you get a chance to talk. So go ahead. Very much. There's three brief points I'd like to make. First of all, a short one. My learned friend's citation to Burton is inapposite. Burton is a non-accomplice case. Burton was the only robber involved in his case. There were no accomplices. This is about the liability of a non-killer accomplice under California's felony murder rule. I would invite the Court's attention to the California Supreme Court's decision two years after Cabot's case in People v. Dominguez. There, I want to quote briefly. They say, In Washington, we reversed a felony murder conviction, concluding that the felony murder rule could not apply because, quote, The killing was not committed in perpetration of the robbery. And here is the crucial statement. This was so, we explain, because the killing was not in furtherance of the robbery. The view of the felony murder rule that the killing must advance or facilitate the underlying felony has been superseded, superseded by later cases. That statement acknowledges that before the California Supreme Court decided to reverse the felony murder rule, the California Supreme Court, under Cabot's case, it and the California Courts of Appeal construed the words in furtherance of the underlying felony, committed in furtherance of the underlying felony, to mean committed to advance or facilitate the felony. The only case, and this point is extremely important, the only case cited in Dominguez as authority for its statement that the advance or facilitate construction has been superseded is Cabot's case, which wasn't decided until 2004. That fact reveals that there's no previous California felony murder case that ever construed the words in furtherance of to mean anything other than facilitate or advance the felony. That brings me to the third point I want to make. Ms. Haley says, how does an accidental death possibly advance the felony? How can one say that? That misunderstands what accidental death is in relation to advancing the felony. It's not, well, I'll say what it is. Suppose in committing a bank robbery, one of the robbers rushes toward the exit and accidentally knocks over a customer or a security guard, causing that person to fall down and fracture her skull and die. That's an accidental death, but clearly the fatal act, the rushing toward the door, which caused the person to fall over, was committed to advance the felony. That's why there's no contradiction between accidental death and felony murder and our position. This is the flip side of your hypothetical, that it's also logically connected? In that case? Yes. In that case, clearly. I mean, if logical nexus – well, I submit that logical nexus is a standardless term and that that's why it violates due process. The jury has no definition or guideline for determining when a logical nexus between a homicide and an underlying felony exists or doesn't exist. But you just drew in your example a logical nexus between the two. I submit that that term is really misleading and makes no sense in this context. Logical nexus? How does logic have anything to do with this? You could say there's a causal connection in that case because the robbers' act in furtherance of the bank robbery caused the accidental death. So that would fit within California's felony murder rule, as it has always been interpreted. All right. Thank you very much. Thank you. Well argued. We appreciate the argument.
judges: Noonan, Fisher, Nguyen